UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER MONGIOVE and YARINEL
GONZALEZ, individually and on behalf of
others similarly situated,

             Plaintiffs,

    -against-

NATE'S CORP., SAND LANE PHARMACY
CORP., VITACARE PHARMACY CORP.,
BORIS NATENZON, ANGELA
NATENZON, BERNARD GLEZERMAN,
and SIMON LORBERT,

             Defendants.

Case No.:

**COMPLAINT**

**Collective Action and Class Action
Complaint**

Plaintiffs PETER MONGIOVE ("Mongiove") and YARINEL GONZALEZ ("Gonzalez")
individually and on behalf of others similarly situated by and through their attorneys, SERRINS
FISHER LLP, allege against Defendants NATE'S CORP. ("Nate's"), SAND LANE
PHARMACY CORP. ("Sand Lane"), VITACARE PHARMACY CORP.
("Vitacare")(collectively, the "Corporate Defendants"), BORIS NATENZON ("Natenzon"),
ANGELA NATENZON ("A. Natenzon"), BERNARD GLEZERMAN ("Glezerman"), and
SIMON LORBERT ("Lorbert")(collectively, the "Individual Defendants") as follows:

### JURISDICTION AND VENUE

    1.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b)
(Fair Labor Standards Act), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331
(original federal question jurisdiction).  Supplemental jurisdiction over the New York State law
claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this District because Defendants conduct business in this district, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## THE PARTIES

3.     Defendant Nate's is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 516 Broadway, Staten Island, NY 10310.

4.     Defendant Sand Lane is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 307 Sand Lane, Staten Island, NY 10305.

5.     Defendant Vitacare is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 252 Port Richmond Ave, Staten Island, NY 10302.

6.     Upon information and belief, at all times relevant hereto, the Corporate Defendants have been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

7.     At all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

8.     At all relevant times hereto, Plaintiffs were engaged in interstate "commerce" within the meaning of the FLSA.

9.      Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

10.     At all relevant times hereto, Defendants have employed "employee[s]," including Plaintiffs.

11.     At all relevant times hereto, Defendants have been Plaintiffs' employers within the meaning of the NYLL §§ 2 and 651.

12.     Plaintiff Mongiove is an adult individual residing in the State of New York, who has been employed by Defendants within the last six (6) years to work as a pharmacist at the Port Richmond Avenue pharmacies, as well as other pharmacies.

13.     Plaintiff Gonzalez is an adult individual residing in the State of New York, who has been employed by Defendants within the last six (6) years to work as a pharmacy technician at the Port Richmond, Forrest Avenue and Vitacare pharmacies.

### *The Individual Defendants and Their Pharmacies*

14.     Upon information and belief, Defendant Natenzon resides in the State of New Jersey and is an owner, manager, and/or employee of the Corporate Defendants.

15.     Upon information and belief, Defendant A. Natenzon resides in the State of New Jersey and is an owner, manager, and/or employee of the Corporate Defendants.

16.     Upon information and belief, Defendant Glezerman resides in the State of New Jersey and is an owner, manager, and/or employee of the Corporate Defendants.

17.     Upon information and belief, Defendant Lorbert resides in the State of New Jersey and is an owner, manager, and/or employee of the Corporate Defendants.

18.     Defendants own pharmacies in Richmond, Kings, and New York Counties in the State of New York.

19.     Defendants own four pharmacies in Richmond County, which are located at:

    i.   252 B Port Richmond Avenue, Staten Island, NY 10302;

    ii.  812 Forest Avenue, Staten Island, NY 10310;

    iii. 252 Port Richmond Ave, Staten Island, NY 10302 ("Vitacare Store"); and

    iv.  307 Sand Lane, Staten Island, NY 10302.

20.     Defendants also own pharmacies located at 376 Van Brunt Street, Brooklyn, NY 11231 in Kings County and 205 3rd Avenue, New York, NY 10003 in New York County.

21.     The Individual Defendants are natural persons engaged in business in the State of New York, who are sued individually in their capacities as owners, officers, employees, and/or agents of the Corporate Defendants.

22.     Upon information and belief, the Individual Defendants are shareholders of various Corporate Defendants.

23.     Defendant Natenzon is the Defendants' Chief Executive Officer.

24.     Defendant Glezerman is the Defendants' Chief Operating Officer.

25.     Defendant Lorberg is the Defendants' Vice President of Specialty Services.

26.     The Individual Defendants exercise operational control over the Corporate Defendants' operations.

27.     At all relevant times, all Defendants have been Plaintiffs' employer within the meaning of the FLSA and NYLL.  The Individual Defendants possessed and executed the power to hire and fire Plaintiffs, controlled their terms and conditions of employment,

determined the rate and method of any compensation in exchange for their services, and maintained records of their employment.

28.     The Individual Defendants created and enforced policy for the Corporate Defendants, including the employee pay policies and work schedules. All personnel and operational decisions were made or approved by at least one of the Individual Defendants.

29.     By way of example, Defendants Natenzon and Glezerman both set Plaintiffs' schedules, while Defendant Natenzon hired and fired Plaintiffs.

30.     The Individual Defendants, as one of the ten largest shareholders of the Corporate Defendants, are individually responsible for unpaid wages under the New York Business Corporation Law (**Exhibit 1**).

31.     The Individual Defendants are Plaintiffs' employers under the Fair Labor Standards Act ("FLSA"), New York State Labor Law ("NYLL"), Family Medical Leave Act, 29 U.S.C. 2601, *et seq.* ("FMLA"), New York State Human Rights Law, Executive Law § 290 *et seq.* ("Human Rights Law,") and the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law") and are individually liable to Plaintiffs.

### *Integrated Enterprise Coverage*

32.     The Corporate Defendants operate as an integrated enterprise.

33.     The Individual Defendants own, manage, and/or operate each of the Corporate Defendants.

34.     The Individual Defendants apply the same pay policies to each of the six pharmacies they own and/or operate.

35.     The Corporate Defendants share employees, including Plaintiffs.

36.     The Corporate Defendants also share equipment and medication among the various pharmacies.

## NATURE OF THE ACTION

37.     Plaintiffs bring this action on behalf of (a) themselves and other similarly situated employees who have worked for the Defendants on or after the date that is three (3) years before the filing of this Complaint pursuant to the FLSA; and (b) themselves and other similarly situated employees on or after the date that is six (6) years before the filing of this Complaint pursuant to the NYLL and the New York Commissioner of Labor's Wage Orders codified at 12 N.Y.C.R.R. 137 *et seq.*, based upon the following acts and/or omissions:

     i.   Defendants' failure to pay overtime compensation required by federal and state law and regulations to Plaintiffs who worked in excess of forty (40) hours per week;

     ii.  Defendants' failure to pay Plaintiffs for all hours worked;

     iii. Defendants' failure to provide Plaintiffs with a wage notice or proper paystubs as required by NYLL § 195; and

     iv.  Defendants' failure to provide Plaintiff Gonzalez with uniform reimbursement payments as required by 12 N.Y.C.R.R. 142-2.5.

38.     Plaintiff Mongiove also brings a claim under the FMLA, Human Rights Law, and City Law for:

     i.   Defendants' unlawful interference and termination of Plaintiff Mongiove for requesting leave under the FMLA;

ii. Defendants' discriminatory termination of Plaintiff Mongiove on the basis of his disability/record of disability, in violation of the Human Rights Law and City Law; and

iii. Defendant's retaliatory termination of Plaintiff Mongiove because he availed himself of a reasonable accommodation because his disability, in violation of the Human Rights Law and City Law.

39.    Plaintiff Mongiove was at all times an "eligible employee" within the meaning of the FMLA in that he had been continuously employed by Defendants for more than one (1) year and had worked more than 1,250 hours during the twelve months preceding his leave.

40.    Defendants employ more than fifty (50) employees within a seventy-five mile radius of their place of business.

41.    At all relevant times, Defendants employed more than four (4) people and accordingly are "employers" under the Human Rights Law and City Law.

42.    Plaintiff Mongiove was at all times material hereto an "individual" within the meaning of the Human Rights Law protected against discrimination on the basis of disability.

43.    At all relevant times, Plaintiff Mongiove was a "person" within the meaning of the City Law and protected from discrimination on the basis of disability.

44.    At all relevant times, Plaintiff suffered from a "disability" under the Human Rights Law and City Law.

45.    At all relevant times, Plaintiff had a record of a disability under the City Law.

46.     At all relevant times, Plaintiff suffered from a FMLA qualifying condition that required hospitalization.

## PROCEDURAL REQUIREMENTS

47.     Pursuant to §8-502(c) of the City Law, Plaintiff Mongiove shall serve a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York within ten (10) days of filing this Complaint.

## FACT ALLEGATIONS

48.     At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that they have been violating federal and state laws and that Plaintiffs have been and continue to be economically injured.

49.     Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

### *Plaintiff Mongiove's Schedule and Pay*

50.     Defendants hired Plaintiff Mongiove as a pharmacist on December 10, 2011.

51.     From the beginning of Plaintiff Mongiove's employment until on and about June 29, 2014, Plaintiff regularly worked without a break on Monday, Tuesday, Thursday and Friday from approximately 8:30 a.m. until 8:20 p.m.

52.     Plaintiff Mongiove also worked on Saturday every other week from approximately 8:30 a.m. until 6:20 p.m.

53.     Depending on whether Plaintiff Mongiove worked on Saturday, Plaintiff Mongiove regularly worked between approximately 47 and 57 hours until June 29, 2014.

54.     Defendants, however, only paid Plaintiff Mongiove for the work he performed between 9:00 a.m. and 8:00 p.m. on Monday, Tuesday, Thursday and Friday and between 9:00 a.m. and 6:00 p.m. for his Saturday work instead of all the hours he worked.

55.     Plaintiff Mongiove took medical leave from June 29, 2014 until the end of July 2014.

56.     Upon Plaintiff Mongiove's return in August 2014, he worked three or four days a week as a rotating pharmacy working at Defendants' various pharmacies in Richmond County as directed by the Individual Defendants.

57.     From September 1, 2014 through the end of Plaintiff Mongiove's employment on January 15, 2015, Plaintiff Mongiove worked without a break as a rotating pharmacy working at Defendants' various pharmacies in Richmond and Kings Counties as directed by the Individual Defendants as follows:

      i.    Wednesday – from 8:30 a.m. until 8:30 p.m.

      ii.   Thursday – from 8:30 a.m. until 8:30 p.m.

      iii.  Friday – from 8:30 a.m. until 8:30 p.m.

58.     Plaintiff Mongiove also worked from 9:00 a.m. until 5:00 p.m. on Saturday one week and from 9:00 a.m. to 3:00 p.m. on Sunday.

59.     During this time period, Plaintiff Mongiove worked between 42 and 44 hours each week depending on whether he worked Saturday.

60.     Defendants only paid Plaintiff Mongiove for the hours he worked between 9:00 a.m. and 8:00 p.m. on Wednesday, Thursday, and Friday instead of all the hours he worked.

61.     Throughout Plaintiff Mongiove's employment, Defendants paid Plaintiff Mongiove at an hourly rate of $55 and failed to pay him for all the hours he worked or a higher rate for his hours in excess of 40.

62.     At no time during Plaintiff Mongiove's employment did Defendants pay him at a higher overtime rate for hours he worked in excess of 40.

### Plaintiff Gonzalez's Schedule and Pay

63.     Defendants hired Plaintiff Gonzalez as a pharmacist technician on December 1, 2009.

64.     Plaintiff Gonzalez worked from December 1, 2009 until approximately May 11, 2012 at the Port Richmond store.

65.     Plaintiff Gonzalez then worked until October 26, 2012 at the Forrest Avenue store.

66.     Plaintiff Gonzalez worked from October 31, 2012 until January 27, 2014 at the Vitacare store.

67.     From the beginning of her employment through on or about June 2010, Plaintiff Gonzalez regularly worked without a break from Monday through Thursday from approximately 8:30 a.m. until 7:30 p.m.

68.     Instead of paying Plaintiff Gonzalez for all the hours she worked, Defendants only paid Plaintiff Gonzalez for her work between hours of 9:00 a.m. and 7:00 p.m.

69.     From July 2010 until May 11, 2012, Plaintiff Gonzalez regularly worked without a break Monday through Thursday from approximately 8:30 a.m. until 7:30 p.m.

70.     Plaintiff Gonzalez also worked without a break on Friday from 8:30 a.m. until 5:30 p.m. or 6:30 p.m.

71.     Defendants, however, only paid Plaintiff Gonzalez for her work between hours of 9:00 a.m. and 7:00 p.m. on Monday through Thursday and from 9:00 a.m. and 5:00 p.m. or 6:00 p.m. on Friday.

72.     From the beginning of her employment, Defendants paid Plaintiff Gonzalez at an hourly rate of $12 until January 2011 when she received a raise to $13.

73.     From May 14, 2012 until October 26, 2012, Plaintiff Gonzalez worked without a break from Monday through Friday as follows:

     i.    Monday – from 9:00 a.m. through 5:00 p.m.

     ii.   Tuesday – 12:00 p.m. through 8:00 p.m.

     iii.  Wednesday and Thursday - 10:00 a.m. through 6:00 p.m.

     iv.   Friday – 9:00 a.m. through 5:30 p.m. to 6:00 p.m.

74.     Defendants generally paid Plaintiff Gonzalez for all her hours on Monday through Thursday, but only paid her for her work on Friday between 10:00 a.m. through 5:00 p.m.

75.     Defendants paid Plaintiff Gonzalez for this work at an hourly rate of $13.

76.     From October 31, 2012 until on or about the end of August 2013, Plaintiff Gonzalez regularly worked without breaks Monday through Friday as follows:

     i.    Monday – from 8:30 a.m. through 7:30 p.m.

     ii.   Tuesday – 9:30 a.m. through 8:15 p.m.

     iii.  Wednesday – 9:30 a.m. or 10:30 a.m. through 7:30 p.m.

     iv.   Thursday – 8:30 a.m. through 6:30 p.m.

     v.    Friday – 8:30 a.m. through 5:30 p.m.

77.    Instead of paying Plaintiff Gonzalez for all the hours she worked, Defendants paid Plaintiff Gonzalez, however, from 9:00 a.m. through 7:00 p.m. on Monday, 9:00 a.m. through 8:00 p.m. on Tuesday, 9:00 a.m. or 10:00 a.m. through 7:00 p.m. on Wednesday, 9:00 a.m. through 6:00 p.m. on Thursday, and 9:00 a.m. through 5:00 p.m. on Friday.

78.    Defendants paid Plaintiff Gonzalez for this work at an hourly rate of $13 until December 2012 when they raised her hourly rate of pay to $14.

79.    Beginning in September 2013 until the end of her employment, Plaintiff Gonzalez's schedule again changed and she regularly worked with a half-an-hour break as follows:

     i.    Monday – from 9:00 a.m. through 5:30 p.m.

     ii.   Tuesday – 11:30 a.m. through 8:00 p.m.

     iii.  Wednesday – 10:30 a.m. through 7:00 p.m.

     iv.   Thursday – 9:00 a.m. through 5:30 p.m.

     v.    Friday – 8:30 a.m. through 5:00 p.m.

80.    Three to four times a week, Plaintiff Gonzalez would work past her scheduled shift for between 15 minutes to 30 minutes and was not paid anything for this work.

81.    Defendants paid Plaintiff Gonzalez received an hourly rate of $14.

82.    Aside from not paying Plaintiff Gonzalez for each hour she worked, Defendants also never paid her a higher overtime premium for the hours she worked in excess of 40.

83.    Instead, Defendants paid her at her regular rate.

### *Defendants' Violations of NYLL § 195*

84.     Defendants have failed to provide Plaintiffs with a wage notice in compliance with NYLL § 195.

85.     Defendants did not at any time provide Plaintiffs with a notice specifying their rate of pay, the basis of pay, allowances, if any, claimed against the minimum wage (e.g., tips, meals, lodging) or the identification of their regular pay day.

86.     Defendants also failed to provide Plaintiffs with wage statements stating, among other things, the number of overtime hours they worked or their hourly rate for overtime hours.

### *Defendants' Failure to Pay Plaintiff Gonzalez for her Uniform Purchases*

87.     Defendants required Plaintiff Gonzalez to wear scrubs when performing her work duties.

88.     Although Defendants initially provided Plaintiff Gonzalez with one pair of scrubs, they required her to purchase additional pairs throughout her employment.

89.     Defendants have failed to reimburse Plaintiff Gonzalez for the expenses she incurred in purchasing the additional pairs of scrubs as required by 12 N.Y.C.R.R. 142-2.5.

### *Discrimination and Retaliation Against Plaintiff Mongiove*

90.     Throughout his employment, Plaintiff Mongiove consistently met Defendants' performance expectations and satisfactorily carried out his job duties.

91.     On and about March or April 2014, Plaintiff Mongiove informed Defendant Natenzon that he would need to take medical leave to undergo prostrate surgery.

92.     On and about June 27, 2014, Plaintiff Mongiove underwent prostrate surgery.

93.     On July 3, 2014, Plaintiff Mongiove was forced to undergo another prostrate operation.

94.     Subsequently, Plaintiff Mongiove was hospitalized on July 9, 2014 and July 12, 2014 because of dehydration resulting from the surgery.

95.     Plaintiff Mongiove returned to work on July 29, 2014.

96.     From the beginning of his employment until June 27, 2014, when he took medical leave, Plaintiff Mongiove had been the full-time pharmacist at the Port Richmond pharmacy.

97.     Defendant Natenzon advised Plaintiff Mongiove upon his return to work on July 29, 2014 that for the month of August he would not work as the full-time pharmacist at the Port Richmond pharmacy.

98.     Instead Plaintiff Mongiove would work on a reduced, fluctuating schedule as a rotating pharmacist rotating at several of Defendants' Richmond and Kings County pharmacies.

99.     At the end of August 2014, Plaintiff Mongiove asked Defendant Natenzon when he could return to his full-time position at the Port Richmond pharmacy.

100.    Defendant Natenzon advised Plaintiff Mongiove that although he would begin to work a fixed schedule, he would continue to work at a reduced schedule as a rotating pharmacist at several of Defendants' Richmond and Kings County pharmacies and would not return to his full-time position at the Port Richmond pharmacy.

101.    As part of his job duties, Plaintiff Mongiove generally opened the pharmacy at which he worked.

102.    On and about January 14, 2015, Plaintiff Mongiove forgot to bring his keys to the Sand Lane pharmacy and was unable to open to the store.

103.    Plaintiff Mongiove immediately advised the manager regularly working at the Sand Lane pharmacy that he needed someone to open the pharmacy.

104.    The pharmacy opened after a short delay.

105.    Nevertheless, Defendant Natenzon "wrote up" Plaintiff Mongiove because of the store's late opening.

106.    On January 15, 2015, Defendants terminated Plaintiff Mongiove's employment.

107.    By first reducing Plaintiff Mongiove's hours and then terminating him as a result of taking medical leave, Defendants violated Plaintiff Mongiove's rights under federal, state and local laws.

108.    Defendants' actions were intentional and in reckless disregard for the health and well-being of Plaintiff Mongiove.  As a proximate result of these actions, Plaintiff Mongiove has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation, harm to his reputation and loss of wages and benefits.

## COLLECTIVE ACTION ALLEGATIONS

109.    Defendants' failure to comply with the FLSA extended beyond the Plaintiffs to all other similarly situated employees insofar as Defendants had a policy to pay their employees at their regular rate for the hours they worked in excess of 40.

110.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated current and former non-exempt employees of Defendants pursuant to 29 U.S.C. § 216(b).

111.    The consent to sue forms for the Plaintiffs are attached hereto as **Exhibit 2**.

112.    Upon information and belief, there are at least 100 current and former employees who have been denied proper overtime wage compensation while working for Defendants.

113.    At all relevant times, Plaintiffs and others who are and/or have been similarly situated, were paid by Defendants in similar ways, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the statutorily required overtime compensation for hours worked in excess of forty (40) per workweek.  The claims of Plaintiffs stated herein are similar to those of the other employees.

114.    In bringing this action, Plaintiffs are representative of and are acting on behalf of the interests of other current and former non-exempt employees who have worked for Defendants within the last three (3) years.

## CLASS ACTION ALLEGATIONS UNDER FED.R.CIV.P.23(b)(3) FOR VIOLATIONS OF THE NYLL

115.    Plaintiffs bring this action on behalf of themselves and all other non-exempt persons who were or are employed by the Defendants but who did not receive compensation required by the NYLL in respect to their work for the Defendants.

116.    Upon information and belief, this class of persons consists of not less than 150 employees, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed.R.Civ.P.23(a)(1).

117.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual members, specifically: whether the

employment of Plaintiffs by the Defendants is subject to the jurisdiction and the wage and overtime requirements of the NYLL.

118.    The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

119.    Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

120.    A class action is superior to the other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P.23(b)(3).

121.    Plaintiffs bring the second through seventh claims for relief herein on behalf of themselves and all other persons similarly situated as a class action pursuant to Fed.R.Civ.P.23, in respect to all claims that Plaintiffs and all persons similarly situated have against the Defendants as a result of the Defendants' violations under the NYLL.

## FIRST CLAIM FOR RELIEF
### (Overtime Wage Violations under the FLSA as to all Plaintiffs)

122.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

123.    Throughout the statute of limitations period covered by these claims, Plaintiffs and others similarly situated regularly worked in excess of forty (40) hours per workweek.

124.    At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiffs and others similarly situated at one and a half times their regular rate of pay for all hours of work in

excess of forty (40) hours per workweek, and willfully failing to keep required records, in violation of the FLSA.

125.    Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
### (Overtime Wage Violations under NYLL as to all Plaintiffs)

126.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

127.    New York law prohibits an employer from permitting an employee to work without paying overtime wages for all hours worked in excess of forty (40) in any workweek.

128.    Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly have failed to pay Plaintiffs and others similarly situated at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per workweek.

129.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (NYLL Failure to Notify as to all Plaintiffs)

130.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

131.    Pursuant to §195(1) of the NYLL, within ten business days of each Plaintiffs and other similarly situated employee's hiring, Defendants were obligated to provide them with a notice describing, *inter alia*, their hourly regular and overtime rates of pay.

132.    Pursuant to §195(3) of the NYLL, Defendants were required to provide to Plaintiffs and others similarly situated a wage statement containing, *inter alia*, a record of each overtime hour worked and the employee's overtime rate of pay.

133.    Defendants failed to provide Plaintiffs and others similarly situated with a notice or proper wage statements in accordance with §195 of the NYLL.

134.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek damages in accordance with §198 of the NYLL for each week Defendants failed to provide such notice and wage statement, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract as to all Plaintiffs)

135.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

136.    Defendants entered into an oral contract with Plaintiffs and others similarly situated to perform work as described above.

137.    Plaintiffs and others similarly situated satisfactorily supplied labor in connection with, and in furtherance of, the work required under their oral employment contract with Defendants and in doing so, complied with the terms of their employment contract with Defendants and were therefore entitled to wages they rightfully earned while working for Defendants.

138.    Defendants agreed to pay Plaintiffs and others similarly situated an hourly wage for each hour they worked.

139.    Defendants failed to pay Plaintiffs and others similarly situated at that hourly rate for each of the hours they worked.

140.    That by virtue of the foregoing breach of contract by Defendants, Plaintiffs and others similarly situated have been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiffs and others similarly situated should have been paid as contemplated by their employment agreement with Defendants, less amounts actually paid to Plaintiffs and others similarly situated together, with an award of interest, costs, disbursements, and attorneys' fees.

### FIFTH CLAIM FOR RELIEF
**(NYLL Failure to Pay Straight Time as to all Plaintiffs)**

141.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.    At all relevant times hereto, pursuant to NYLL § 190 *et. seq.* Defendants were obligated to pay Plaintiffs and others similarly situated an hourly rate for each hour they worked and not to divert or withhold any portion of their wages.

143.   Defendants failed to pay Plaintiffs and others similarly situated their hourly rate for each hour they worked.

144.   As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL §§ 663 and 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
**(NYLL Uniform Violations as to Plaintiff Gonzalez)**

145.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

146.   Pursuant to 12 N.Y.C.R.R. 142-2.5, Defendants were obligated to reimburse Plaintiffs and others similarly situated for the expenses they incurred in purchasing uniforms.

147.   Defendants failed to reimburse Plaintiff Gonzalez and others similarly situated for uniform purchases.

148.   As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff Gonzalez others similarly situated have sustained damage and seek recovery for unlawful deductions in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### (FMLA Interference as to Plaintiff Mongiove)

149.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.    Plaintiff Mongiove put Defendants on notice that he qualified for FMLA leave when he informed Defendant Natenzon that he would need prostrate surgery.

151.    Defendants interfered with Plaintiff Mongiove's right to take FMLA leave by reducing his hours reassigning him to a less desirable position shortly after Plaintiff Mongiove availed himself of FMLA leave and then terminating him.

152.    Defendants' violations of Plaintiff Mongiove's FMLA rights were willful and intentional.

153.    As a result of Defendants' unlawful acts, Plaintiff Mongiove suffered damages, including past and future lost wages and benefits, liquidated damages, reasonable attorneys' fees and costs of bringing this action.

## EIGHTH CAUSE OF ACTION
### (FMLA Retaliation as to Plaintiff Mongiove)

154.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155.    Defendants reduced Plaintiff Mongiove's hours and then terminated his employment with the purpose of retaliating against him for exercising his right to take leave under the FMLA.

156.    Defendants' violations of Plaintiff Mongiove's FMLA rights were willful and intentional.

157.   As a result of Defendants' unlawful acts, Plaintiff Mongiove suffered damages, including past and future lost wages and benefits, liquidated damages, reasonable attorneys' fees and costs of bringing this action.

### NINTH CLAIM FOR RELIEF
### (Discriminatory Termination of Plaintiff Mongiove
### On the Basis of Disability
### In Violation of Human Rights Law)

158.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.   By the acts and practices described above, Defendants discriminated against Plaintiff Mongiove on the basis of his disability, in violation of Human Rights Law, by reducing his hours and then terminating his employment.

160.   Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff Mongiove's statutorily protected rights.

161.   Plaintiff Mongiove has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

### TENTH CLAIM FOR RELIEF
### (Discriminatory Termination of Plaintiff Mongiove
### On the Basis of Disability
### In Violation of City Law)

162.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

163.    By the acts and practices described above, Defendant discriminated against Plaintiff Mongiove on the basis of his disability, in violation of City Law, by reducing his hours and then terminating his employment.

164.    Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff Mongiove's statutorily protected rights.

165.    Plaintiff Mongiove has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

### ELEVENTH CLAIM FOR RELIEF
**(Retaliatory Termination of Plaintiff
On the Basis of Disability
In Violation of Human Rights Law)**

166.    Plaintiffs repeat and reallege the foregoing paragraphs as though fully set forth herein.

167.    By the acts and practices described above, Defendants retaliated against Plaintiff Mongiove on the basis of his disability, in violation of Human Rights Law, by reducing his hours and then terminating his employment.

168.    Defendants knew that their actions constituted unlawful retaliation and/or acted with malice or reckless disregard for Plaintiff Mongiove's statutorily protected rights.

169.    Plaintiff Mongiove has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' retaliatory practices, unless and until this Court grants the relief hereinafter described.

## TWELFTH CLAIM FOR RELIEF
### (Retaliatory Termination of Plaintiff
### On the Basis of Disability
### In Violation of City Law)

170.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

171.   By the acts and practices described above, Defendants retaliated against Plaintiff Mongiove on the basis of his disability, in violation of City Law, by reducing his hours and then terminating his employment.

172.   Defendants knew that their actions constituted unlawful retaliation and/or acted with malice or reckless disregard for Plaintiff Mongiove's statutorily protected rights.

173.   Plaintiff Mongiove has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' retaliatory practices, unless and until this Court grants the relief hereinafter described.

[no further text on this page]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

A. Compensatory Damages in an amount to be determined at trial;

B. Punitive and Emotional Distress Damages to Plaintiff Mongiove;

C. Back Pay and Front Pay to Plaintiff Mongiove;

D. Liquidated Damages Under the FMLA to Plaintiff Mongiove;

E. Prejudgment Interest;

F. Liquidated Damages Pursuant to the FLSA and NYLL;

G. Costs and Reasonable Attorneys' Fees; and

H. Any relief the Court deems just and proper.

Dated: February 27, 2015
        New York, New York

                                        Respectfully submitted,

                                        Alan Serrins (AS-4739)
                                        Michael Taubenfeld (MT-4640)
                                        SERRINS FISHER LLP
                                        233 Broadway, Suite 2340
                                        New York, New York 10279
                                        Phone: (212) 571-0700
                                        Facsimile: (212) 233-3801
                                        *ATTORNEYS FOR PLAINTIFFS*

Exhibit 1

## DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:     NATE'S CORP.
              SAND LANE PHARMACY CORP.
              VITACARE PHARMACY CORP.

PLEASE TAKE NOTICE that PETER MONGOIVE and YARINEL GONZALEZ, as employees of the above corporation who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants, and/or employees of the above corporation for services performed by them for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and who have expressly authorized the undersigned, as their attorney, to make this demand on his behalf,

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and record of shareholders of the above corporation and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: New York, New York
       February 27, 2015

                           SERRINS FISHER LLP

                          _____/s/_____
                          Michael Taubenfeld (MT-4640)
                          233 Broadway, Suite 2340
                          New York, New York 10279
                          Phone: (212) 571-0700
                          Facsimile: (212) 233-3801
                          *ATTORNEYS FOR PLAINTIFFS*

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
## FOR SERVICES RENDERED

TO:   BORIS NATENZON
        BERNARD GLEZERMAN
        SIMON LORBERT
        ANGELA NATENZON

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that PETER MONGOIVE and YARINEL GONZALEZ, on behalf of themselves and on behalf of all others similarly situated, intend to charge you and hold you personally liable as one of the ten largest shareholders of NATE'S CORP., SAND LANE PHARMACY CORP., and VITACARE PHARMACY CORP., for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      Dated: New York, New York
            February 27, 2015

                                    SERRINS FISHER LLP

                                    _____/s/_____

                                    Michael Taubenfeld (MT-4640)
                                    233 Broadway, Suite 2340
                                    New York, New York 10279
                                    Phone: (212) 571-0700
                                    Facsimile: (212) 233-3801
                                    *ATTORNEYS FOR PLAINTIFFS*

Exhibit 2

## CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an individual who was employed by Nate's Pharmacy and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by me in this case.

_Peter Mongiove_
NAME

_[signature]_
SIGNATURE

_2/10/15_
DATE

## CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an individual who was employed by Nate's Pharmacy and/or related entities.  I consent to
be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the
Professional Services Agreement signed by me in this case.


Marinel Gonzalez
NAME

_(signature)_
SIGNATURE

11th feb. 2015
DATE