UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PETER MONGIOVE and YARINEL
GONZALEZ, individually and on behalf of
others similarly situated,

                    Plaintiffs,

-against-

NATE'S CORP., SAND LANE PHARMACY
CORP., VITACARE PHARMACY CORP.,
BORIS NATENZON, ANGELA NATENZON,
BERNARD GLEZERMAN, and SIMON
LORBERT,

                    Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CV-1024 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

On June 6, 2015, Plaintiffs filed an Amended Complaint asserting claims under of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), New York common law, and New York City Law. (Am. Compl. (Dkt. 14).) Defendants answered on July 10, 2015. (Ans. (Dkt. 19).) Now before the court is Plaintiffs' fully-briefed motion to conditionally certify an FLSA collective action. (Not. of Mot. to Certify a Collective Action (Dkt. 23).) For the reasons stated below, Plaintiffs' motion is GRANTED.

**I.   BACKGROUND**

Peter Mongiove ("Mongiove") is employed by Defendants as a pharmacist. (Am. Compl. ¶ 15.) Yarinel Gonzalez ("Gonzalez") is employed by Defendants as a pharmacy technician. (Id. ¶ 16.)

Plaintiffs allege that each Defendant is part of an integrated enterprise. (Id. ¶ 35). Specifically, Plaintiffs allege that each Individual Defendant created and enforced policies for all

1

the Corporate Defendants (id. ¶ 31), and that the Individual Defendants control each Corporate Defendant and manage each in substantially the same way (id. ¶¶ 36, 37).

Relevant here, Plaintiffs allege that the policies implemented by the Individual Defendants at each Corporate Defendant violated the FLSA in two ways. First, Plaintiffs allege that they were not paid for each hour that they worked (see, e.g., id. ¶¶ 57, 63, 80, 83); and second, they allege that they were not paid the proper overtime rate (id. ¶¶ 64-65, 85-86).

## II. LEGAL STANDARDS

### A. Certification of a Collective Action of Similarly Situated Employees

29 U.S.C. Section 216(b), which authorizes collective actions under the FLSA, provides in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added). "Thus, Section 216(b) of the FLSA provides a private right of action to an employee to recover unpaid minimum wages and/or overtime compensation from an employer who violates the Act's provisions, and permits such an action to be brought as a collective action." Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010).

"To determine whether an action should be certified as an FLSA collective action, a two-step analysis is used." Bifulco v. Mortg. Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "The first step is to determine whether the proposed class members are 'similarly situated.'" Id.

> During the first step of the FLSA collective action inquiry 'the court examines pleadings and affidavits, and if the court finds that proposed class members are similarly situated, the class is conditionally certified; potential class members are then notified and given an opportunity to opt-in to the action. At the initial assessment stage, before discovery is completed, the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.'

Summa, 715 F. Supp. 2d at 384-85 (quoting Francis v. A&E Stores, Inc., No. 06-CV-1638 (CLB) (GAY), 2008 WL 2588851, at *1-2 (S.D.N.Y. June 26, 2008) (report and recommendation), adopted in relevant part by, 2008 WL 461958 (S.D.N.Y. Oct. 16, 2008)). "In this early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate." Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005); see also Bifulco, 262 F.R.D. at 212 (quoting Scholtisek with approval).

"Neither the FLSA nor its accompanying regulations define the term 'similarly situated.'" Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). "However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.) (collecting cases); see also Bifulco, 262 F.R.D. at 212 (applying Hoffman); Scholtisek, 229 F.R.D. at 387 (same). "Importantly, the determination that potential plaintiffs are similarly situated is merely a preliminary one." Summa, 715 F. Supp. 2d at 385 (quoting Bifulco, 262 F.R.D. at 212). "While this is a very liberal standard, conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward

as a collective action." Mendoza v. Casa de Cambio Delgado, Inc., No. 07-CV-2579 (HB), 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008).

"[T]he second phase of the FLSA collective action inquiry typically occurs after the completion of discovery; at that point, the court makes a factual finding based on the developed record as to whether or not the class members are actually 'similarly situated.'" Bifulco, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." Hens v. ClientLogic Operating Corp., No. 05-CV-381, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006) (citing Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)); see also Bifulco, 262 F.R.D. at 212. "At this juncture, if discovery reveals that the plaintiffs are not similarly situated, then 'the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims.'" Summa, 715 F. Supp. 2d at 385 (quoting Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y 2008)).

### B.  Notice

"The Supreme Court has held that the benefits to the judicial system of collective actions 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) (quoting Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)). "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)

(alteration removed) (quoting Hoffman, 439 U.S. at 169). Thus, "[u]pon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice." Martin v. Sprint/united Mgmt Co., No. 15-CV-5237 (PAE), 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016) (citation omitted).

### III. DISCUSSION

#### A. Certification of a Collective Action

Defendants raise a number of arguments in opposition to preliminary certification of a collective action. For the reasons stated below, the court rejects each argument.

##### 1. Illegal Pay Schemes Alleged in the Amended Complaint

Defendants first argue that "the only policy specifically alleged by Plaintiffs in the Amended Complaint—with respect to the collective action allegations—concerns Defendants allegedly having a policy of paying their nonexempt employees at the regular rate of pay" for overtime hours; accordingly, Defendants reason that allegations that employees are similarly situated based on a policy of shaving hours or not paying overtime at all should be disregarded. (Def.'s Mem. in Opp'n to Pls.' Mot. for Conditional Certification of a Collective Action ("Defs.' Mem.") (Dkt. 30) at 7-8.)

Plaintiffs respond that the collective action allegations in the Amended Complaint are not limited to a straight time claim. Specifically, Plaintiffs argue that the Amended Complaint asserts collective claims on behalf of Plaintiffs and other employees due to "Defendants' failure to pay overtime compensation required by federal and state law and regulations to Plaintiffs who worked in excess of forty (40) hours per week." (Pls.' Reply Mem. in. Supp. of Conditional Certification of a Collective Action ("Pls.' Reply") (Dkt. 31) at 2 n.1.)

Although Plaintiffs' Amended Complaint is far from clear, the court finds that it asserts more than just a straight time claim as a collective action.

As a preliminary matter, Defendants are correct that in the section of the Amended Complaint entitled "Collective Action Allegations" Plaintiffs only allege that that Defendants have a policy of paying their employees at the regular rate for hours they worked in excess of 40. (Am. Compl. ¶ 115.)

However, the Amended Complaint, taken as a whole, alleges multiple wrongful pay schemes on behalf of Plaintiffs and "other similarly situated employees" including both "failure to pay overtime compensation required by federal and state law and regulations" and "failure to pay Plaintiffs for all hours worked". (See Am. Compl. ¶ 40(i)-(ii).) Both schemes are also alleged with regard to each Plaintiff. For example, with regard to Mongiove, Plaintiffs allege both that Defendants failed to pay him overtime as required by law (Am. Compl. ¶¶ 64-65) and failed to pay him for all the hours that he worked (Id. ¶¶ 57, 63). The same is true for Gonzalez. (See id. ¶ 80 (alleging that Gonzalez not paid for all hours worked); ¶ 83 (alleging that Gonzalez worked past his scheduled shift and was not paid); ¶¶ 85-86 (alleging that Gonzalez was paid straight time instead of overtime). Finally, Plaintiffs first claim for relief—an FLSA claim asserted on behalf of "all Plaintiffs"—is drafted broadly enough to encompass both an overtime rate theory and a time shaving theory. It alleges that Defendants failed "to pay Plaintiffs and others similarly situated at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek." (Id. ¶ 130.) Plainly this language includes an overtime rate claim. It however can also include a time shaving claim because the result of time shaving where an employee actually works more than 40 hours a week is that the employee ends up not being paid the proper overtime rate.

The court is mindful that "it makes little sense to certify a collective action based on manifestly deficient pleadings." Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013). Nonetheless, because the Amended Complaint provides adequate notice to Defendants of which allegedly unlawful pay schemes are being pursued on behalf of all similarly situated employees, the court will not restrict its analysis to only allegations regarding overtime rates.

2. Common Scheme or Policy

Defendants next argue that "the evidence relied on by the Plaintiffs . . . demonstrate the lack of a common scheme or plan" because the Plaintiffs allege that they were paid their regular rate for overtime hours and that they were not paid for certain hours worked, whereas certain other identified employees allege that they were never paid at all for overtime and that they were not paid for certain hours worked. (Defs.' Mem. at 8 (emphasis in original).) Plaintiffs respond that:

> Defendants have misconstrued the common policy and practice that Plaintiffs identified. Plaintiffs allege that Defendants regularly did not compensate their employees for their work before and after a shift. However, Defendants did generally pay their employees at their regular rate of pay for their overtime hours when those overtime hours were scheduled. These two policies are consistent with one another and do not constitute multiple policies or practices.

(Pls.' Reply at 2.)

The two schemes Plaintiffs allege are consistent regardless of whether an employee ends up being paid his or her normal wage for overtime hours, or no overtime at all. That is, two illegal schemes—paying straight time rates for overtime hours and time shaving—can consistently result in some employees appearing to claim that they were paid the wrong rate for overtime while others claim they were not paid overtime at all.

7

Consider two employees: A and B. Employee A actually works 45 hours per week. However, as a result of time shaving, she is credited with working only 42 hours per week. Then, as a result of the employer's failure to pay a proper overtime rate she is paid her normal rate for the two overtime hours for which she is credited. Employee A has not been payed the proper overtime rate for hours 41 and 42 and has not been paid overtime at all for hours 43 through 45. Now consider Employee B, who actually works 41 hours per week. However, as a result of time shaving she is only credited with working 38 hours. Consequently, Employee B would not be paid any overtime compensation at all, and thus, Employee B would not appear to have been paid the wrong overtime rate.

In essence, Defendants' argument is that because Employee A alleges that she was paid the wrong overtime rate and Employee B alleges that she was not paid overtime at all, they have alleged conflicting pay schemes. They have not; instead, the results of two overlapping schemes (wrong rate and time shaving) causes some employees to be paid their normal rate for overtime hours and other employees not to be paid overtime at all. This does not mean that the employees are not similarly situated. Both schemes could affect all employees; in fact, both schemes do actually affect all employees who, despite time shaving, are credited with working over 40 hours in a week.

A close examination of the declarations submitted by Plaintiffs reveals that this is the exact scenario Plaintiffs have alleged. For example, Mongiove alleges that "Defendants regularly shaved off hours from the time clock and failed to pay me for each hour I worked. So even though the pharmacies I worked at regularly closed around 8:30 p.m., Defendants never paid me for the work I performed after 8:00 p.m." (Decl. of Peter Mongiove ("Mongiove Decl.") (Dkt. 25) ¶ 10.) Mongiove further alleges that "Defendants never paid me time-and-a-half for

8

the overtime hours I worked." (Id.) Finally, Mongiove alleges that despite hour shaving, he was regularly credited with over 40 hours of work per week. (Id. ¶¶ 11-13.) Likewise, Gonzalez alleges that "Defendants failed to pay for me each hour I worked, and also never paid me at time-and-a-half for my overtime hours." (Decl. of Yarinel Gonzalez ("Gonzalez Decl.") (Dkt. 26) ¶ 4.) Gonzalez further claims that he was regularly credited with over 40 hours of work per week. (Id. ¶¶ 5, 6.) Julian Vega makes similar allegations. (Decl. of Julian Vega ("Vega Decl.") (Dkt 28) ¶¶ 3-6.) Thus, for Mongiove, Gonzalez, and Vega, the twin pay schemes (wrong rate and time shaving) result in less overtime hours and overtime being paid at the wrong rate, much like Employee A above.

Michael Rivera alleges that he "regularly worked 41 or more hours a week." (Decl. of Michael Rivera ("Rivera Decl.") (Dkt. 27).) Nonetheless, he alleges that "despite regularly working more than 40 hours each week, Defendants paid me $9.50 an hour for up to 40 hours of work. Defendants did not pay me anything for my overtime hours." (Id.) Accordingly, for Rivera, the twin pay schemes (wrong rate and time shaving) result in no overtime being paid at all, much like Employee B above.

Thus, the allegations in the declarations are not contradictory and do not preclude conditional certification.

### 3. Similarly Situated

Finally, Defendants argue that "Plaintiffs have failed to demonstrate that they are similarly situated to other employees" because (1) Plaintiffs have different job duties than other employees (Defs.' Mem. at 10); (2) Plaintiffs have different pay rates than other employees (Id. at 11); and (3) Plaintiffs allege different unlawful schemes (Id.). Plaintiffs respond by arguing that "the specific hourly rate and the particular duties performed by each putative member of the

collective action is irrelevant. The sole question is whether Plaintiffs and the putative members of the collective action suffered from an unlawful policy or practice." (Pls.' Reply at 4.) Plaintiffs are correct.

"Indeed, the type of 'person-by-person fact-intensive inquiry [sought by Defendants] is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit.'" Amador v. Morgan Stanley & Co. LLC, No. 11-CV-4326 (RJS), 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013) (quoting Raniere v. Citigroup, Inc., 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011), rev'd on other grounds, 533 F. App'x 11 (2d Cir. 2013) (summary order)); see also Zaniewski v. PRRC Inc., 848 F. Supp. 2d 213, 230 (D. Conn. 2012) ("An objection at this preliminary stage to conditional classification based upon individual employees' asserted different circumstances is clearly part of the FLSA defense bar's play book, but it has not found favor with the courts, and it does not persuade this Court in this case. This is the sort of issue that is more properly considered on a more complete record.").

To be sure, there are cases where a plaintiff's job duties or pay rate would be relevant at the preliminary certification stage. For example, if the alleged FLSA violation was that plaintiff has been misclassified as an exempt employee, determining whether the proposed members of the collective action had similar job duties may be relevant. See, e.g., Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 324 (E.D.N.Y. 2012) ("In sum, the Plaintiff here has failed to provide any factual support for the contention that other ASMs at HomeGoods' stores in New York, let alone nationwide, primarily performed non-exempt tasks."). But this does not mean that common job duties or common hourly wage rates are required for a collective action. Instead, the court is tasked with parsing the alleged scheme to determine whether any differences raised by Defendants are relevant to the scheme alleged by the Plaintiffs. See Hoffmann, 982 F. Supp.

10

at 261 (noting the importance of a common scheme affected all plaintiffs to the certification of a collective action).

Here, the purported differences between employees identified by Defendants do not affect the applicability of the allegedly unlawful scheme that Plaintiffs have identified; and therefore, the differences are not a bar to preliminary certification. Plaintiffs allege that Defendants had two policies that applied to all employees regardless of job duties or pay rate. In this context, the purported differences between members of the collective action that Defendants identify are simply irrelevant because a common scheme or policy allegedly affects all employees. See, e.g., Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (conditionally certifying a collective action of in-store hourly employees, assistant store managers, and delivery drivers who alleged that they were paid straight time instead of overtime rates); Morris v. Lettire Constr., Corp., 896 F. Supp. 2d 265, 272 (S.D.N.Y. 2012) (conditionally certifying a collective action that included construction sites where no plaintiff worked because the purportedly illegal policy equally impacted all sites); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (rejecting defendants' argument that the class should be limited to duck feeders because "Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class").

Here, Plaintiffs have alleged two schemes that impacted all of Defendants' nonexempt employees. Thus, the court finds that Plaintiffs have adduced sufficient evidence to justify preliminary certification of a collective action.

**B.    The Proposed Notice**

Having concluded that a collective action should be preliminarily certified, the court turns to the terms of the notice of that collective action. See, e.g., Sanchez v. El Rancho Sports Bar Corp., No. 13-CV-5119 (RA), 2014 WL 1998236, at *3 (S.D.N.Y. May 13, 2014). Defendants raise a number of objections to the terms of Plaintiffs' proposed notice. (See Defs.' Mem. at 12-21.) The court addresses each in turn.

    1.    Length of the Notice Period: Three or Six Years

Defendants argue that "[t]he notice period for all of [the] FLSA claims asserted in the Complaint should be limited to a maximum of three years." (Defs.' Mem. at 13.) Defendants reason that because collective action notice is inextricably tied to the FLSA claims, the notice period should align with the FLSA three year maximum limitations period. (Id.) Plaintiffs respond that the notice should extend back six years because the Complaint alleges claims under NYLL, which has a six year limitations period. (Pls.' Reply at 5.) Both parties can marshal district court opinions that support their views. See, e.g., Sanchez, 2014 WL 1998236, at *4 (collecting cases that support both a three and six-year notice period for collective action notices).

The court finds that a three-year notice period is more appropriate for two reasons. First, "[t]he Court's discretion to facilitate notice of FLSA claims is premised on its case management authority; that authority is distinguishable in form and function from the solicitation of claims. Authorizing notice for a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal articulated [by the Supreme Court when it approved court facilitated notice]." Trinidad, 962 F. Supp. 2d at 563-64. Second, and relatedly, the "more recent trend . . . is to approve three-year notice periods to avoid the confusion caused by

notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred." El Rancho Sports Bar, 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (internal quotation marks and citations omitted).

Thus the notice period is limited to three years. "If and when a class is certified under New York law, class members will receive notice at that time through the class action notification process." Romero v. La Revise Associates, L.L.C., 968 F. Supp. 2d 639, 649 (S.D.N.Y. 2013).

          2.      <u>Commencement of the Notice Period: Mailing or Filing of Complaint</u>

Defendants next contend that the notice period should commence from the date of the mailing of the notice. (Defs.' Mem. at 14.) Plaintiffs respond that "the Court should also tie the notice period to the filing of the original Complaint." (Pls.' Reply at 6.)

"[B]ecause the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that individual opts into the action, notice is generally directed to those employed within three years of the date of the mailing of the notice." Martin, No. 15-CV-5237 (PAE), 2016 WL 30334, at *16 (S.D.N.Y. Jan. 4, 2016) (quoting Bittencourt v. Ferrara Bakery & Cafe Inc., 310 F.R.D. 110, 116 (S.D.N.Y. 2015)). "On the other hand, 'because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiff's actions will be entertained at a later date.'" Bittencourt, 310 F.R.D. at 116 (quoting Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)). Here, the court finds that the notice period should run from the date of the filing of the Complaint because "where the Court permits notice to be effectuated upon a large

13

class of Plaintiffs, the determination as to the timeliness of each future plaintiff's action is better reserved for a future proceeding." Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011); see also Barrett v. Forest Labs., Inc., No. 12-CV-5225 (RA) (MHD), 2015 WL 6437494, at *1-2 (S.D.N.Y. Oct. 5, 2015) (collecting cases that delay adjudication of individual tolling claims until after notice is issued). Accordingly, the notice period should run from the filing of the Complaint.

### 3. Should All Current and Former Nonexempt Employees Receive Notice

Defendants argue that "notice should only be disseminated to hourly employees who were paid their regular rate for hour work over 40 per week—which, at most, can include pharmacists, pharmacy technicians, and dispatchers at Nate's Corp." (Defs.' Mem. at 14-15 (emphasis in original).) Plaintiffs respond that they "have made a sufficient showing that other types of employees were also paid in accordance with Defendants' unlawful pay practices." (Pls.' Reply at 7.)

As explained above (see supra Part III.A.), Plaintiffs have sufficiently demonstrated common schemes or policies that affected workers at all of Defendant's businesses. Accordingly, the notice shall be circulated to all nonexempt employees of the Defendants.

### 4. Plaintiffs' Request for Names and Telephone Numbers

Plaintiffs request "the names, last-known mailing addresses, phone numbers, and email addresses of prospective plaintiffs who were employees during the period between February 27, 2009 to the present." (Pls.' Mem. at 13.) Defendants object to providing (1) six years of data, (2) emails and telephone numbers, and (3) digital data. (Defs. Mem. at 15-16.)

First, Defendants are correct that only three years' worth of employee data need to be produced. Because the notice-period is limited to three years, Defendants need only provide

information for employees who worked for Defendants in the three years prior to the filing of the Complaint.

Second, telephone numbers and emails should be produced. "In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) (collecting cases). Defendants, citing Colozzi v. St. Joseph's Hospital Heath Center, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009), argue that phone numbers and email should not be disclosed because they are inherently private. To the contrary, the court finds that disclosure of phone numbers and email addresses is necessary to facilitate the opt-in process. Whitehorn v. Wolfgang's Steakhouse, No. 09-CV-1148 (LBS), 2010 WL 2362981, at *3 (S.D.N.Y. June 14, 2010) (rejecting Colozzi, even before certification, because the disclosure of telephone numbers and email addresses is important to facilitating the opt-in process).

Third, Defendants have not indicated how producing a digital list of employees' data would be burdensome. Accordingly, the court requires the production of data to be in digital format.

Finally, Defendants have requested thirty (30) days to produce employee data. Plaintiffs have not objected.

Thus, Defendants are ordered to provide to Plaintiffs with a digital list of names, last-known mailing addresses, phone numbers, and email addresses of prospective plaintiffs who were employees of Defendants during the three years preceding the filing of the Complaint within thirty days of the issuance of this Memorandum and Order.

5. <u>Reminder Notice</u>

Defendants argue that a reminder notice should not be permitted because "Plaintiffs have utterly failed to make any showing as to why a reminder notice is necessary." (Defs.' Mem. at 21.) Plaintiffs respond that "[a] reminder notice makes sense because putative opt-in Plaintiffs' FLSA claims continue to run unless they join this action." (Pls.' Reply at 8.)

"[T]here is 'no general consensus among district courts as to the propriety of sending reminder notices.'" Flood v. Carlson Restaurants Inc., No. 14-CV-2740 (AT), 2015 WL 6736118, at *2 (S.D.N.Y. Nov. 3, 2015) (quoting Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012)). Nonetheless, the court finds Plaintiffs' reasoning more persuasive. A reminder notice facilitates the remedial goals of the FLSA by protecting potential class members against their claims being extinguished by the running limitations period. See id.; Sultonmurodov v. Mesivita of Long Beach, No. 15-CV-1654 (LDW), 2015 WL 5918415, at *2 (E.D.N.Y. Oct. 9, 2015) ("Sending a reminder notice is consistent with the FLSA's objective of informing potential plaintiffs of the collective action and their right to opt-in."); Lopez v. JVA Indus., Inc., No. 14-CV-9988 (KPF), 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (collecting cases approving reminder notices).

Accordingly, Plaintiffs are permitted to send out a reminder notice.

6. <u>Language of the Notice and Consent to Join</u>

Finally, the parties contest the specific language of the proposed notice on a number of grounds. (See, e.g., Defs.' Mem. at 16-20; Pls.' Reply at 8-9.)

As a preliminary matter, Plaintiffs do not contest Defendants' fifth, sixth, and last change. Accordingly, the court approves Defendants' fifth, sixth, and last change.

"Plaintiffs oppose Defendants' first three proposed changes insofar they impermissibly fail to advise recipients of the Notice that they may have claims under NYLL that relate back to February 27, 2009." (Pls.' Reply at 8.) As explained above, a three year notice period measured from the filing of the Complaint is appropriate here. Thus, Defendants first and second changes are accepted in part. The notice period should be changed to reflect a three year period running from the filing of the Complaint.

Defendants' third proposed change is also accepted in part. Defendants seek to inform potential plaintiffs that "[i]n the Collective Action portion of this lawsuit, Plaintiff alleges that Defendants violated federal law by paying employees their regular rate of pay for each hour worked over 40 hours per week." (Defs.' Mem. at 17.) As explained above, the collective action portion is not limited to only an overtime rate claim. Thus, Defendants third proposed change impermissibly narrows the notice. Defendants' addition of Magistrate Judge Levy to the notice is approved.

Defendants' fourth proposed change is accepted in part. As explained above, a three-year notice period measured from the filing of the Complaint is appropriate here. Accordingly, Defendants' changes should be modified to reflect the proper notice period. Additionally, the fourth proposed change should be altered to reflect that all nonexempt employees may join the collective action. Otherwise, the fourth proposed change is accepted.

Defendants' seventh proposed change is accepted. As explained above, notice under the FLSA is distinct from of a state law class action. Thus, the FLSA notice should not reflect the possibility of recovery under New York state law.

Defendants' eighth proposed change is accepted in part. As explained above, Defendants' changes should be modified to reflect the proper notice period—three years from

the filing of the Complaint. Additionally, the eighth proposed change should be altered to reflect that all nonexempt employees may join the collective action. Otherwise, the eighth proposed change is accepted.

Plaintiffs do not object to the first paragraph of the ninth proposed change. Thus, the court accepts Defendant's ninth proposed change with respect to the first paragraph. With respect to the second paragraph, Defendants argue that information concerning the payment of attorneys' fees should be omitted as unnecessary and irrelevant. The court disagrees, "[b]ecause the fee structure may impact on 'opt-in' Plaintiff's recovery, if any, notice of those agreements should be provided up front." Fasanelli, 516 F. Supp. 2d at 324. For this reason, "[n]otices often contain discussion of similar contingency fee arrangements." Mendoza v. Ashiya Sushi 5, Inc., No. 12-CV-8629 (KPF), 2013 WL 5211839, at *8 (S.D.N.Y. Sept. 16, 2013). Thus, with regard to proposed change nine, Defendants' proposed change to the second paragraph is rejected.

With regard to the tenth proposed change, Defendants' proposed change is accepted in part. As explained above, a three year notice period measured from the filing of the Complaint is appropriate. Accordingly, Defendants' changes should be modified to reflect the proper notice period. Defendants further request that consents to join be mailed or hand delivered to the Clerk of Court. "Courts within this Circuit have split on whether the consent forms should be returned to the Clerk of the Court or to plaintiff's attorney." Dilonez v. Fox Linen Serv. Inc., 35 F. Supp. 3d 247, 257 (E.D.N.Y. 2014). The court finds that consents to join should be mailed to the Clerk of Court. As noted in Dilonez, mailing consents to join to the Clerk of Court both protects opt-in plaintiffs from the limitations period on their claim running and avoids suggesting that plaintiffs cannot choose their own counsel.

Additionally, Defendants request that the contents under heading fourteen be deleted. The court disagrees, the statement under heading fourteen informs opt-in plaintiffs of their important right to select their own counsel.

Finally, Defendants request to add to the notice that the court has authorized the notice and that the court takes no position with regard to the claims or defenses. Plaintiffs do not appear to object. Accordingly, Defendants' addition is approved.

As modified, the court approves Plaintiffs' proposed notice.

## IV. CONCLUSION

For the reasons states above, Plaintiffs' motion to conditionally certify an FLSA collective action is GRANTED. Additionally, with the modifications outlined above, Plaintiffs' proposed notice is APPROVED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
February 9, 2016

NICHOLAS G. GARAUFIS
United States District Judge